IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOHNATHAN ROY RIDGE | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv058 |
| GREGG COUNTY, et al. | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRTE JUDGE</u>

Plaintiff Johnathan Roy Ridge filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his constitutional rights in the Gregg County Jail. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by the only remaining Defendant, Dr. Gary White, seeking summary judgment due to Plaintiff's failure to exhaust administrative remedies. (Dkt. #26.) Plaintiff responded in opposition to the motion (Dkt. #27), and Defendant replied. (Dkt. #29.) The motion is thus fully briefed and ripe for review. For the reasons explained below, the undersigned recommends that the motion be granted and that summary judgment be entered in favor of Defendant.

**I. Plaintiff's Allegations and Background**

Plaintiff originally filed suit on February 4, 2022, while he was an inmate in the Gregg County Jail. (Dkt. #1.) At the Court's instruction, he filed an amended complaint, dated February 23, 2022, in which he alleged that Dr. White was denying him proper medical care for a severe pelvis injury, including surgery and a pelvic belt. (Dkt. #8 at 4–5.)

On May 5, 2022, the Court dismissed the City of Longview and the Gregg County Jail as Defendants. (Dkt. #22.) Dr. White answered the amended complaint on April 26, 2022, and moved for summary judgment on June 24, 2022. (Dkt. ##20, 26.)

On July 22, 2022, Plaintiff notified the Court that he was being released from jail and provided his new address. (Dkt. #30.)

## II. The Parties' Briefs and Evidence

A. Defendant White's motion

Defendant White moves for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies for his claim prior to filing suit. (Dkt. #26.) He relies on the affidavit of Chief Deputy and Jail Administrator Jeff Callaway, who testifies that Gregg County maintains a 4-step grievance procedure requiring inmates first to submit a grievance either on a paper form or through an electronic kiosk. (Dkt. #26-1 at 2.) The grievance board provides an inmate with a written response within 15 days, and an inmate who disagrees with the response may appeal within 7 days to the facility lieutenant. (*Id.* at 2–3.) If he is dissatisfied with the lieutenant's response, he may appeal to the jail administrator, and from the administrator's response he may appeal to the Sheriff. (*Id.* at 3.) The Sheriff's response is the final ruling on an inmate grievance. (*Id.*)

These grievance procedures are explained in an Inmate Handbook, and Plaintiff was aware of the procedures and acknowledged receipt of the rules containing the procedures. (*Id.* at 2, 4.) The Gregg County Inmate Handbook describing the grievance process is attached to Callaway's affidavit, as is an acknowledgment of receipt of the Gregg County jail rules, signed by Plaintiff on the date he was booked into the jail—November 30, 2021. (Dkt. #26-3; Dkt. #26-2 at 1, 19.)

Callaway also testifies that although Plaintiff submitted several complaints or requests styled as grievances while he was in the jail, none of them "appear to be true grievances," and they

2

do not explicitly complain about Dr. White. (Dkt. #26-1 at 3.) Moreover, Plaintiff did not appeal the response to any of those grievances. (*Id.* at 3–4.) To support this testimony, Callaway attached to his affidavit copies of the grievances Plaintiff submitted during his incarceration, both on paper and electronically. (Dkt. #26-2 at 3–18.) Submissions dated January 13, 2022, January 26, 2022, January 30, 2022, February 2, 2022, February 3, 2022, and February 15, 2022, all complain of the need for some treatment or accommodation of Plaintiff's pelvis injury/broken bone. (*Id.* at 4–11.) There is no appeal from any of the grievances.

Accordingly, Defendant asserts that he is entitled to summary judgment due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

B. Plaintiff's response

The gist of Plaintiff's response is that he "should not be penalized for not following 'rules' when he was never given those rules" or for failing to "[e]xhaust his available administrative remedies, of which he knew not." (Dkt. #27 at 4–5.) Plaintiff says that he was forced to sign the form acknowledging receipt of the rules as part of his booking process, but that he was not actually given the handbook with grievance procedures at that time because he was placed directly into suicide watch, where he was not allowed to possess any paperwork. (*Id.* at 3, 5.)

Plaintiff also asserts that his later release from suicide watch "did not insure [sic] Plaintiff knew the proper steps to follow regarding grievances." (*Id.* at 7.) He does not dispute that the handbook was available electronically in a kiosk to which he had access (and which he used to submit several grievances). But he argues that is not an effective means of advising the inmate population of the rules, because they are not "computer savvy." (*Id.* at 6.) Without addressing his own subjective understanding or ability to navigate the kiosk system, he asserts that "[m]ost

3

inmates are not capable of taking all the steps required by a set of Rules that they know nothing about." (*Id.*) He suggests he should not be held accountable for following the grievance procedure because "[n]o person connected to Dr. White or Gregg County ever walked by the cell and instructed everyone to make sure and read and study the administrative remedies; they never told the Plaintiff." (*Id.* at 7.)

    C.  Defendant's reply

In reply, Defendant reiterates that Plaintiff's signed written acknowledgment establishes his receipt of the handbook with the grievance procedure. (Dkt. #29 at 2.) But, he argues, even if Plaintiff did not receive the handbook at booking, the record establishes that he had access to it electronically in the kiosk as of December 8, 2021, little over a week after he entered the jail. (*Id.* at 3.) Defendant points to a "facility documents log" attached to Callaway's affidavit, which indicates some connection between Plaintiff and the "Inmate Rules, Handbook" on December 8, 2021. (Dkt. #26-2 at 20.) It is unclear whether the log denotes that Plaintiff actually accessed the handbook on that date or simply had the ability to do so. Defendant argues that Plaintiff's "multiple submissions on the kiosk contradict his argument that the kiosk is somehow difficult to use." (Dkt. #29 at 3.) Moreover, Defendant White notes, that same log indicates that Plaintiff had access to the handbook during a previous stint in the jail, on May 12, 2020. (*Id.* at 3 n.1; Dkt. #26-2 at 20.)

Defendant White asserts that "the evidence conclusively proves that the grievance procedure was made available" to Plaintiff and that he is entitled to summary judgment. (Dkt. #29 at 4.)

### III. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.

*EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**IV. Discussion and Analysis**

Congress enacted the PLRA in 1996, mandating that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013)

(explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). The Court explained that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

7

The evidence submitted by Defendant White clearly establishes that Plaintiff failed to comply with that requirement. At best, Plaintiff submitted relevant initial grievances that he failed to appeal through any of the higher channels available.

Plaintiff does not contest that point. He only disputes the evidence that he was aware of the grievance procedures in the jail and suggests his ignorance should excuse his failure to comply. But "courts may not deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015). In this case, even if Plaintiff did not actually receive a copy of the jail rules at the time he was booked, the form he signed clearly informed him that such rules existed, and it was incumbent upon him to seek them out upon his release from suicide watch. He could have done so by exploring the same kiosk he used to submit several grievances. His submission of those grievances clearly establishes that he was aware that there was a grievance process available to him; he had only to "apprise himself" of its details, which are clear and straightforward. (*See* Dkt. #26-3 at 1.)

Moreover, while Plaintiff's placement directly into suicide watch at the time of *this* booking might have kept him from receiving a printed copy of the handbook, Defendant White's evidence indicates that this was not Plaintiff's first stay in the Gregg County Jail. Indeed, the jail's publicly available records establish that, in addition to his November 2021 incarceration that gave rise to this case, Plaintiff has been booked into the jail on the following dates: December 3, 2005 (released December 4, 2005); July 29, 2006 (released September 30, 2006); April 25, 2013 (released April 29, 2013); May 30, 2015 (released November 13, 2015); August 19, 2016 (released November 17, 2016); September 15, 2019 (released September 16, 2019); November 2, 2019 (released November 19, 2019); November 29, 2019 (released November 30, 2019); May 11, 2020

(released August 10, 2020); and December 21, 2020 (released December 22, 2020). Gregg County Jail Records Search Results for Johnathan Roy Ridge, available at http://beta.co.gregg.tx.us/OdysseyPA/JailingSearch.aspx?ID=400 (last visited January 6, 2023). The Court may take judicial notice of those facts. Fed. R. Evid. 201 (permitting judicial notice of "adjudicative fact[s]" that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Defendant White submitted proof that Plaintiff had access to the handbook electronically during at least one of those prior stays. (Dkt. #26-2 at 20.) It would defy reason to suggest that Plaintiff was never given a handbook during any of those previous incarcerations or that he failed to become aware that there were rules governing the grievance process that he needed to review and follow.

The record establishes that Plaintiff knew or had reasonable opportunity to know of the applicable grievance rules and yet failed to exhaust his available remedies before filing suit. Because he was still incarcerated at the time of filing, his "subsequent release does not relieve him of the requirement to exhaust administrative remedies for this current legal action that he initiated while in [jail]." *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019), *as revised* (July 2, 2019). Accordingly, Section 1997e requires dismissal of this action, and Defendant White is entitled to summary judgment.

## RECOMMENDATION

Accordingly, the undersigned recommends that Defendant's motion for summary judgment (Dkt. #26) be **GRANTED.** Plaintiff's claims should be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A

party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 9th day of January, 2023.**

*[signature]*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE